No. 99-003

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 337

297 Mont. 421

992 P.2d 1283

STATE OF MONTANA,

Plaintiff and Appellant,

v.

PATRICIA LEE KANE,

a/k/a PATRICIA LEE BROMAN,

a/k/a PATRICIA McDONOUGH,

3/22/1941,

Defendant and Respondent.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hon. Joseph P. Mazurek, Montana Attorney General, Mark W. Mattioli, Assistant Montana Attorney General, Helena, Montana; Mike McGrath, Lewis and Clark County Attorney, Helena, Montana

For Respondent:

Ken Gray, Greg Jackson, Jackson & Rice, Helena, Montana

Submitted on Briefs: August 12, 1999

Decided: December 29, 1999

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶ In April, 1998, the State of Montana (the State) charged Patricia Lee Kane (Kane) by information, with Theft (Common Scheme), a felony, in violation of § 45-6-301(1)(c) and (8), MCA, for purposely or knowingly obtaining or exerting unauthorized control over funds and other items belonging to Bryan Hilger (Hilger) and used, concealed, or abandoned the funds/items knowing such activity probably would deprive the owner of it. Kane filed a motion to dismiss claiming that the funds referred to were checks drawn on a joint account making theft impossible as a matter of law. The State amended the Information to allege that Kane obtained control over Hilger's funds by deception. The District Court granted Kane's motion to dismiss, and the State filed a notice of appeal, which it withdrew when it filed a motion requesting the District Court to reconsider the dismissal. In October, 1998, the District Court denied the State's motion to reconsider. The State appeals from that Order. We affirm.

¶ The issue presented for review is whether the District Court erred in concluding that as a joint tenant on a checking account with Hilger, Kane could not, as a matter of law, be prosecuted for theft of funds taken from that account.

¶ A district court's denial of a motion to dismiss criminal charges is a matter of law which we review *de novo*, determining only whether the court correctly interpreted the law. *State ex rel. Booth v. Montana Twenty-First Judicial District*, 1998 MT 344, ¶ 10, 292 Mont. 371, ¶ 10, 972 P.2d 325, ¶ 10.

¶ The record in this matter is limited as a result of this appeal originating from a motion to dismiss. However, the essential facts presented by the parties on appeal are not in dispute. Hilger, at the time of the State's appeal, was in his mid-eighties and in poor health. Kane was a long-time friend of Hilger's whom he had allowed to manage his affairs. In January, 1992, Hilger gave Kane a general power of attorney so that she could assist him with his finances. In July, 1994, Hilger and Kane established a joint checking account. The bank signature card stated "[t]his account/certificate of deposit is jointly owned by the parties named hereon. Upon the death of any of them, ownership passes to the survivor(s)." From 1995 through 1997, Kane wrote checks from the account to herself, which she claims were to pay bills and to reimburse herself for cash purchases she had made on Hilger's behalf. The State indicates that the checks were written out of sequence from three different books of checks and those at issue were not recorded in Hilger's check book register. Overall, Kane transferred around $26,000 from the joint account with Hilger to her personal account.

¶ The State alleges that the funds were for her personal use, thereby depriving Hilger of the use of that money. Their contention is that the power of attorney gave Kane authority to make financial decisions for Hilger's benefit, but not to personally benefit at Hilger's expense. As Hilger's agent, the State claims, Kane owed him the utmost duties of loyalty and fidelity and was not entitled to transfer money from the joint account into her personal account, to which Hilger did not have access. The State asks this Court to conclude that Kane's use of Hilger's funds, in violation of her position of trust, violates the criminal theft statute, § 45-6-301(2)(c), MCA.

¶ Section 45-6-301, MCA, provides the following;

> (1) a person commits the offense of theft when he purposely or knowingly obtains or exerts unauthorized control over the property of the owner and: (a) has the purpose of depriving the owner of the property; (b) purposely or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or (c) uses, conceals, or abandons the property

knowing that the concealment, or abandonment probably will deprive the owner of the property.

Section 45-6-301, MCA. Section 45-6-303(1), MCA, states "it is no defense to a charge of theft of property that the offender has an interest therein when the owner also has an interest *to which the offender is not entitled."* Section 45-6-303(1), MCA (emphasis added). The State argues that the District Court erroneously relied upon our decision in *State v. Haack* (1986), 220 Mont. 141, 713 P.2d 1001, to conclude that there was no legal basis upon which to charge Kane with Theft.

¶ In *Haack*, a contractor was alleged to have taken funds from a joint checking account with homeowners containing the funds for construction of a home. He was charged with theft for writing checks on the joint account and moved to dismiss the charges. The district court found that as a matter of law, he could not be convicted of theft because he was a joint tenant in the account. In affirming the district court's decision, we stated "[a] joint tenancy bank account is a special relationship between co-owners . . . that may create an equal unrestricted and absolute interest in such co-owners with neither co-owner having an interest to which the other is not entitled." *Haack*, 220 Mont. at 143, 713 P.2d at 1002. For guidance, we turned to § 32-1-442, MCA, noting "[w]hen a deposit has been made . . . in the names of two or more persons, payable to either . . . such deposit, or any part thereof . . . may be paid to any of said persons. . . ." *Haack*, 220 Mont. at 144, 713 P.2d at 1002. We concluded that the special relationship between joint tenants in a bank account precludes application of the theft laws, and means that "co-owners in a joint tenancy bank account cannot have any 'unauthorized control' or 'interest to which the offender is not entitled' " as required by § 45-6-301, and 303, MCA. *Haack*, 220 Mont. at 145, 713 P.2d at 1003.

¶ The State does not argue that our decision in *Haack* was incorrect, but rather that it is inapplicable to Kane. They claim that Kane's access to and use of the joint account is a function of her status as Hilger's agent and that Kane was not authorized to use Hilger's funds for her personal use or to permanently deprive him of his property. Therefore, they insist that Kane's status as a joint tenant is no defense to the charge of theft because she was not entitled to the money. *See* § 45-6-303(1), MCA. The State claims instead that our decision in *State v. Curtis* (1990), 241 Mont. 288, 787 P.2d 306, is controlling in this matter.

¶ In *Curtis*, Bullock, an elderly man living alone in Hamilton, Montana, hired Curtis, who

was a licensed practical nurse, to help with his daily affairs. Two months later, he had his attorney draw up a will appointing her as his personal representative, and, among other dispositions, leaving her his home. Bullock provided Curtis with a power of attorney giving her access to his safety deposit box and bank accounts. Over the next year, Bullock's check writing increased from five to seven checks per month to twenty to thirty checks per month. In that year, Curtis received 161 checks totaling $34,540, with her sons receiving several thousand more. Bullock and Curtis then took a $20,000 certificate of deposit held jointly by Bullock and his brother, cashed it, and purchased a new certificate held jointly by Bullock and Curtis. One week later, the certificate was cashed, and the proceeds were deposited in Curtis's and her son's checking accounts, and taken in cash. *See generally, Curtis,* 241 Mont. at 292-93, 787 P.2d 309.

¶ Contrary to the State's argument, *Curtis* is distinguishable from the present case. In *Curtis*, Bullock had given Curtis joint ownership of the certificate of deposit, and a power of attorney. The issue was whether Curtis deceived or threatened him into doing so. The problem with the State's contention in the present case is that like Bullock, when Hilger entered into a joint checking account with Kane, he expressly authorized her to sign on this account. Unlike the prosecution in *Curtis*, in the present case the State does not claim that Hilger did so under duress or deception. Instead, they argue that the alleged deception occurred during Kane's management and expenditure of the funds in the account, *after* she was listed as a joint tenant on the account with Hilger.

¶ Kane insists it is this timing of the alleged deception which must decide the present case. If Hilger willingly, absent threat or deception, entered into the joint account agreement, then co-ownership with Kane entitled her to withdraw funds from the account. As a result the State cannot, as a matter of law, make out the elements of theft under § 45-6-301, MCA.

¶ The State counters that § 72-6-211(2), MCA, governs the joint checking account at issue and permits prosecution for theft in situations like this one. Section 72-6-211(2), MCA, provides: "[d]uring the lifetime of all parties, an account belongs to the parties in proportion to the net contribution of each to the sums on deposit unless there is clear and convincing evidence of a different intent." Section 72-6-211(2), MCA.

¶ The District Court disagreed with this contention, stating "§ 72-6-206 limits the application of the above statute 'only to the controversies between [co-tenants] and their creditors and other successors and [does] not apply to the right of those persons to

payment as determined by the terms of the account' " (alteration in original). As the District Court pointed out:

> the official comments to § 72-6-211, MCA, include the following language: "[t]his section does not undertake to describe the situation between parties if one party withdraws more than that party is then entitled to as against the other party. Sections [72-6-221] and [72-6-226] protect a financial institution in that circumstance without reference to whether a withdrawing party may be entitled to less than the party withdraws as against another party. Rights between parties in this situation are governed by general law other than this part."

¶ We agree with the District Court that § 72-6-211, MCA, does not apply to controversies between co-tenants as urged by the State. Although, the wisdom of the arrangement between Kane and Hilger was certainly questionable, and Kane's actions may have breached the duty of loyalty as an agent, because the State does not allege that Kane deceived or threatened Hilger into establishing the joint tenant arrangement her actions do not make out the elements of the criminal theft statute. We hold that the District Court did not err in concluding that as a matter of law, Kane could not be prosecuted for theft of funds from the joint account with Hilger.

¶ Affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

No