No. 97-591

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 124

299 Mont. 472

2 P. 3d 242

THE STATE OF MONTANA,

Plaintiff and Respondent,

v.

WILLIAM A. MERRICK,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Assistant Appellate Defender, Appellate Defender Office,

Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; James Wheelis,

Assistant Attorney General; Helena, Montana

Fred Van Valkenburg, Missoula County Attorney; James Mickelson,

Deputy County Attorney; Helena, Montana

_____

Submitted on Briefs: February 10, 2000

Decided: May 9, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1 William Merrick appeals from the Judgment of the Fourth Judicial District Court, Missoula County. We affirm.

¶2 Merrick raises one issue on appeal:

¶3 Whether there was sufficient evidence to support Merrick's conviction for robbery?

## FACTUAL BACKGROUND

¶4 On March 13, 1997, Erin Legried, a "loss prevention specialist" at Shopko in Missoula, Montana, was on duty in the loss prevention office at the front of the store. At the time of the incident, Ms. Legried was 19 years old and had worked for Shopko as a loss prevention officer for about five months. It was Ms. Legried's job to watch for theft, stop people suspected of shoplifting as they exited the store and bring them back into her office. She testified that she had been involved in approximately 60 arrests or apprehensions.

¶5 At about 7:15 p.m., while Ms. Legried was in her office doing paperwork, she heard the security alarm go off and witnessed Merrick exiting the store followed by a female employee. Ms. Legried ran outside and followed Merrick about 50 feet into the Shopko parking lot. Ms. Legried approached Merrick, informed him that he had tripped the alarm system, and requested that Merrick return to the store to straighten things out. When Ms. Legried informed Merrick that he had tripped the alarm system, Merrick responded, "That was my gun. I carry a gun. It sets off the alarms." Ms. Legried testified that "when he said that, he kind of unzipped his coat and reached inside." At that point, Ms. Legried testified that she turned around and yelled for someone to call 911 because she thought Merrick was going to pull out a gun and use it to either shoot her or at least scare her in order to get away. Merrick walked away. A man drove up to Ms. Legried in a car and offered to lend her his cell phone. She called 911. Police Officer Thomas B. Johnson of the Missoula Police Department responded. He stopped Merrick about a block from Shopko and placed him under arrest. During a pat down, Officer Johnson retrieved eight knives and two utility knives from inside Merrick's coat.

¶6 On March 27, 1997, the State filed an Information charging Merrick with robbery in violation of § 45-5-401, MCA. In the Information, the State alleged that Merrick purposely or knowingly put Ms. Legried in fear of immediate bodily injury. Merrick was tried by jury and convicted of robbery on May 13, 1997. On July 3, 1997, the District Court sentenced Merrick to a term of 40 years in the Montana State Prison. Merrick appeals.

## STANDARD OF REVIEW

¶7 We review the sufficiency of the evidence to support a jury verdict to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See State v. Roullier*, 1999 MT 37, ¶ 17, 293 Mont. 304, ¶ 17, 977 P.2d 970, ¶ 17.

## DISCUSSION

¶8 Whether there was sufficient evidence to support Merrick's conviction for robbery?

¶9 Section 45-5-401, MCA, provides, in relevant part, that "[a] person commits the offense of robbery if in the course of committing a theft, the person . . . purposely or

knowingly puts any person in fear of immediate bodily injury." Neither party contests the fact that Merrick committed a theft or that in the course of that theft, Ms. Legried was in fear of immediate bodily injury. The only issue is whether Merrick acted with purpose or knowledge in causing that fear. Merrick contends that there was insufficient evidence that he acted purposely or knowingly because Ms. Legried's fear was based on her reaction to his personal appearance and her mistaken belief that he unzipped his coat after informing her that he was carrying a gun.

¶10 "Purposely" and "knowingly" are defined by statute. Section 45-2-101(34), MCA, provides that "a person acts knowingly with respect to the result of conduct described by a statute defining an offense when the person is aware that it is highly probable that the result will be caused by the person's conduct." Section 45-2-101(64), MCA, provides that "[a] person acts purposely with respect to a result or to conduct described by a statute defining an offense if it is the person's conscious object to engage in that conduct or cause that result." Accordingly, whether there was sufficient evidence to convict Merrick depends on whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Merrick was aware that it was "highly probable" that Ms. Legried would fear immediate bodily injury as a result of his conduct or if it was his "conscious object" to cause her fear.

¶11 Ms. Legried testified that after Merrick activated Shopko's theft alarm system, she left her post in the store and approached Merrick in the parking lot. Ms. Legried asked Merrick to return to the store and he refused. After his refusal, Ms Legried testified that the following exchange occurred:

Q. What happened next?

A. . . . I go, well, you set off the alarms, we need to get it straightened out. And [Merrick] said, that was my gun. I carry a gun. It sets off the alarms. And when he said that, he kind of unzipped his coat and reached inside.

. . . .

Q. Now, can you describe for us what the expression on his face was?

A. Um, psycho, kind of evil. I mean, it scared me.

. . . .

Q. And his actions. Can you describe for us again what he did?

A. He, like, when he said, it's my gun, it always sets off the alarms, his coat was probably zipped up to about here (indicating), and he unzipped it and stuck his hand like about right here (indicating), and then that's when I turned around 'cause I thought he was going to pull out a gun.

. . . .

Q. . . . What did you think was going to happen?

A. I thought he was going to pull out a gun and either use it or -- just use it. I mean, use it like to shoot me, or use it to scare me to get me away from him.

¶12 In turn, Merrick admitted that he did tell Ms. Legried that he was carrying a gun and that it set off the security alarm, but that he had meant it as a joke. Merrick also testified that he did not unzip his jacket and insert his hand inside, but that he might have put his hands in his pockets to hold the stolen items in his coat. Merrick points to the fact that the arresting officer, Thomas B. Johnson, testified that had Merrick unzipped his coat it was possible that some of the stolen items would have fallen out.

¶13 The testimony of one witness is sufficient to prove a fact. *See State v. Santos* (1995), 273 Mont. 125, 131, 902 P.2d 510, 514 (citing *State v. Radi* (1978), 176 Mont. 451, 462, 578 P.2d 1169, 1176). Circumstantial evidence may be used to prove any element of an offense. *See State v. Mergenthaler* (1994), 263 Mont. 198, 204, 868 P.2d 560, 563 (citing *State v. Lynn* (1990), 243 Mont. 430, 435, 795 P.2d 429, 433). Additionally, the weight and credibility of witnesses are exclusively the province of the trier of fact. *See Santos*, 273 Mont. at 131, 902 P.2d at 514. In the event of conflicting evidence, it is within the province of the trier of fact to determine which will prevail. *See Santos*, 273 Mont. at 131, 902 P.2d at 514 (citing *State v. Flack* (1993), 260 Mont. 181, 189, 860 P.2d 89, 94).

¶14 Essentially, whether there was sufficient evidence for the jury to find that Merrick acted purposely or knowingly when he put Ms. Legried in fear of immediate bodily injury, turns on a determination of credibility. The jury could have believed Ms. Legried's testimony that when she approached Merrick he told her he had a gun, he had an "evil"

expression on his face, and he unzipped his jacket and reached inside. From this circumstantial evidence, a rational trier of fact could have inferred beyond a reasonable doubt that Merrick was not simply making a joke when he referred to his gun nor was he adjusting the stolen knives when he reached toward his coat, but rather that he mentioned a gun and made a move toward his coat with the awareness that it was highly probable that Ms. Legried would fear immediate bodily injury on account of his conduct.

¶15 We conclude that Ms. Legried's testimony was sufficient evidence to support the jury's finding that Merrick purposely or knowingly put Ms. Legried in fear of immediate bodily injury.

¶16 Affirmed.

/S/ JIM REGNIER


We Concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.