# STATE OF MONTANA,
## Plaintiff and Respondent,
## v.
# KEITH DEBUS,
## Defendant and Appellant.

No. 01-847.
Submitted on Briefs April 11, 2002.
Decided December 12, 2002.
2002 MT 307.
313 Mont. 57.
59 P.3d 1154.

For Appellant: **Christopher K. Williams**, Attorney at Law, Bozeman.

For Respondent: **Hon. Mike McGrath**, Attorney General; **Pamela D. Bucy**, Assistant Attorney General, Helena; **Marty Lambert**, Gallatin County Attorney, Bozeman.

JUSTICE TRIEWEILER delivered the Opinion of the Court.

¶1 The Appellant, Keith Debus, was charged by information filed in the District Court for the Eighteenth Judicial District in Gallatin County with felony theft. Following a two-day nonjury trial, the District Court issued its Verdict in which it found Debus guilty of the offense charged. The District Court sentenced Debus to eight years in the Montana State Prison, all suspended except ninety days to be served in the Gallatin County Detention Center, and ordered Debus to pay restitution to the victims. Debus appeals his conviction. We reverse the judgment of the District Court.

¶2 The following issues are presented on appeal:

¶3 1. Did the State present sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Debus was unauthorized to issue personal checks from Virtual's corporate accounts?

¶4 2. Did the State present sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that the shareholders owned the money over which Debus exercised unauthorized control?

## FACTUAL BACKGROUND

¶5 Keith Debus started Virtual Computer Technologies as a sole proprietor in June of 1993. On March 31, 1994, Debus incorporated Virtual Computer Technologies, Inc. (Virtual). Virtual was authorized to issue 50,000 shares of stock. On April 1, 1994, Debus incorporated VCT, Inc. (VCT), intending that VCT be the parent corporation of Virtual. Virtual then issued 42,500 shares of stock to VCT in exchange for Debus's ownership interest in Virtual, and Dr. Ken Lane purchased 7,500 shares of Virtual stock for $50,000. In the future, stock was to be issued from VCT so that Lane's fifteen percent interest in Virtual would remain the same.

¶6 Between January and August of 1995, Dan Chandler purchased 400 shares of Virtual stock for $6000, Paul Cohn purchased 500 shares of Virtual stock for $20,000 and David Weiss was issued 5000 shares of VCT stock as partial compensation for employment.

¶7 As president, director, and majority shareholder of Virtual, Debus

exercised complete control over the day-to-day operations of Virtual. Debus was an authorized signatory for Virtual and was the only person who signed checks from the corporation's account. Chandler, Cohn and Lane were not involved in the day-to-day management of the corporation.

¶8 In January of 1996, Debus's marriage to Estelle Villasenor was dissolved and he was ordered to pay Villasenor $38,444.50 to equalize the division of marital property and $1002 per month for child support. Debus was jailed for contempt in October of 1997 because he did not make the payments that were required by his Decree of Dissolution. He believed bad publicity from his jail time was partially responsible for Virtual's poor performance later that year.

¶9 On December 1, 1997, Virtual was involuntarily dissolved by the Secretary of State for failure to file an annual report. Despite the dissolution, Debus continued to operate the corporation. On December 4, 1997, Debus began writing checks from Virtual's corporate account to Villasenor and to Jeanette Berry, the attorney who represented him at the October contempt hearing. The total amount of checks issued to Villasenor and Berry was $41,700. Virtual's shareholders were unaware the checks were being written. Debus claims he wrote the checks from the corporate account because failure to make the payments would have resulted in more jail time and negatively impacted Virtual. Berry was aware that the two checks issued to her came from Virtual's accounts. However, she was not alarmed because, in her experience, shareholders in closely held corporations occasionally use the corporate checkbook for personal purposes. Debus did not ask her whether issuing the checks was improper.

¶10 Meanwhile, Lane and Cohn were suspicious that Debus was mismanaging Virtual's finances and, at their request, a shareholder's meeting was held on May 21, 1997. Debus did not produce any financial documents at the meeting. Despite a promise to provide the shareholders with Virtual's financial records within two weeks of the meeting, Debus did not do so.

¶11 Debus's continued failure to provide Virtual's financial records prompted Cohn's attorney to demand that he be allowed to review Virtual's records in September of 1998. Debus assured Cohn the records would be available by the end of the year. However, none of the records were produced.

¶12 The court handling Debus's divorce ordered him to retain CPA, George Schramm, to determine whether Debus could meet his obligation to Villasenor and his children based on his income from

Virtual. This required Schramm to audit Virtual's records. Schramm was unable to complete an audit for the year which ended March 1, 1998, because Debus did not provide him with the necessary financial documents. Schramm testified that the records he did see indicated that Debus had issued checks to Villasenor. However, he did not advise Debus that the expenditures were improper because he was not aware that there were other shareholders, and such expenditures are not illegal if a director is authorized to make them.

¶13 On October 15, 1999, the Atlantic Holding Company, obtained a judgment for $140,400 against Virtual for one year's unpaid rent. It then took possession of Virtual's office at 316 E. Babcock in Bozeman. A shareholder's meeting, attended by Chandler, Cohn, Lane and Weiss, was held, and it was decided that Weiss would retrieve Virtual's records from 316 E. Babcock. After reviewing Virtual's records for the first time, the shareholders discovered that Debus had been writing checks to his ex-wife and attorney from Virtual's accounts without their consent.

¶14 Virtual's shareholders filed a complaint with the Bozeman Police Department and on November 27, 2000, the State charged Debus with felony theft from Virtual or, in the alternative, felony theft from Virtual's shareholders. The District Court dismissed the charge of theft from Virtual. On July 9, 2001, the State filed an amended information that charged Debus with felony theft as part of a common scheme from Lane, Cohn, Chandler, or Wiess in violation of §§ 45-6-301(1)(a) and 45-6-301(2)(a), MCA (1999). Following a two-day nonjury trial, the District Court issued its Findings of Fact, Conclusions of Law and Verdict in which it found Debus guilty of committing felony theft against Lane and Cohn in violation of § 45-6-301(1)(a), MCA (1999). On October 4, 2001, Debus was sentenced to eight years in the Montana State Prison with all time suspended except ninety days to be served in the Gallatin County Detention Center. Debus was further ordered to pay restitution to Chandler, Cohn and Lane. Debus appeals his conviction.

## STANDARD OF REVIEW

¶15 We review the sufficiency of evidence to support a verdict to determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Merrick*, 2000 MT 124, ¶ 7, 299 Mont. 472, ¶ 7, 2 P.3d 242, ¶ 7.

## DISCUSSION
## ISSUE 1

¶16 Did the State present sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Debus was unauthorized to issue personal checks from Virtual's corporate accounts?

¶17 Debus contends that the State did not produce sufficient evidence to prove that he was unauthorized to issue the checks to his attorney and his ex-wife from Virtual's account. Debus maintains that as the majority shareholder of Virtual, the president of Virtual, the only authorized signatory for the corporate account, and the only shareholder involved in management, he was authorized to issue checks from Virtual's account.

¶18 Section 45-6-301, MCA (1999), provides that theft of property exceeding $500 is a felony when a person "purposely or knowingly obtains or exerts unauthorized control over property of the owner and: (a) has the purpose of depriving the owner of the property ...."

¶19 The State relies upon *State v. Kuntz* (1994), 265 Mont. 253, 875 P.2d 1034, for the proposition that Debus was not authorized to write checks for anything unrelated to the corporate purpose without shareholder consent. The State contends that the director of a dissolved corporation is only authorized to conduct business related to winding up the corporation and is not permitted to conduct any new business. Whether the holding in *Kuntz* is binding on the instant case depends on whether the relationship between a director and the assets of a dissolved corporation is governed by the same principles that govern the relationship of a partner to partnership property.

¶20 ■ In *Kuntz*, we held a partner is only authorized to use partnership property for partnership purposes and affirmed the felony theft conviction of a managing partner for diverting partnership funds to a personal bank account without consent from his partners. *Kuntz*, 265 Mont. at 256-57, 875 P.2d at 1036. We relied upon language from § 35-10-502(2), MCA (1991)(repealed Sec. 60, Ch. 238, L. 1993),[1] which provided that a partner was only authorized to use partnership property for partnership purposes unless otherwise agreed upon.

---

[1] The legislative history indicates that 35-10-502, MCA (1991), was repealed in 1993, and the Uniform Partnership Act was amended to clarify the nature of a partnership and the relationship of the partners to one another and the partnership. The amended Uniform Partnership Act provides that a partnership is an entity (§ 35-10-201, MCA), and all language describing the partners relationship with one another as tenants in partnership has been eliminated. Section 35-10-401(7), provides: "A partner may use or possess partnership property only on behalf of the partnership." Therefore, the amendments to the UPA simply clarify our holding in *Kuntz*.

*Kuntz*, 265 Mont. at 256, 875 P.2d at 1036. The particulars of partnership and corporate law may differ, but the principles governing investors, management and entity property are fundamentally similar. *Compare* § 35-10-405, MCA, *with* § 35-1-418, MCA. While the Montana Business Corporation Act does not specifically limit a director's use of corporate property to corporate purposes, the limitation is implied by the duties of good faith and care fundamental to a director's relationship to the corporation. *See* Section 35-1-418, MCA.

¶21 ■ Consequently, *Kuntz* provides guidance in the instant case, and we conclude that absent shareholder consent, Debus was not authorized to use Virtual's monies for any non-corporate purpose. Once Virtual was dissolved, Debus was required to hold Virtual's assets in trust until creditor and shareholder debts were satisfied. Section 35-1-935(2)(c), MCA (1997). Chandler, Cohn, Lane testified that they did not give Debus the authority to issue checks for personal purposes. Therefore, we conclude that the State presented sufficient evidence for the District Court to find that Debus was not authorized to write checks to his ex-wife and attorney from Virtual's account.

¶22 Next, Debus contends that his incarceration in October of 1997 was partially responsible for Virtual's poor business performance and that a failure to pay child support would further damage Virtual's reputation. Therefore, he contends that he was acting in Virtual's best interest by making the payments from corporate funds. He further alleges that he was authorized to rely upon Berry and Schramm's advice concerning the checks pursuant to § 35-1-443, MCA (1997).

¶23 Although Debus testified he was concerned his inability to pay child support would negatively affect Virtual, he produced no evidence that his previous arrest negatively affected Virtual. Furthermore, Virtual was a dissolved corporation. Complying with the statutory requirement to wind up business, pay creditors and pay shareholders was in the best interest of the corporation, not continuing business operations, concealing corporate records, nor satisfying personal debts with corporate assets.

¶24 Debus's claim that he relied in good faith upon the advice of Berry and Schramm is unsubstantiated as well. Debus did not approach either individual for advice nor was any advice offered. Berry and Schramm assumed that Debus was authorized by the shareholders to write checks for personal purposes, properly recorded his transactions, and made the financial statements available to other shareholders. The record indicates that both Berry and Schramm would have advised Debus his conduct was improper if they had been aware of the

extent of his activities. We conclude that Debus was not relying in good faith upon advice from Berry or Schramm.

¶25 Finally, Debus alleges that he was co-owner of the corporate property because the Secretary of State ordered an involuntary dissolution of Virtual in 1998 and therefore the funds were not susceptible to theft by him. He urges this Court to equate a director's interest in corporate property to that of a joint tenant's interest in jointly held property. He maintains that a joint tenant of a bank account cannot be charged with theft of funds from that account pursuant to our holdings in *State v. Kane*, 1999 MT 337, 297 Mont. 421, 992 P.2d 1283 and *State v. Haack* (1986), 220 Mont. 141, 713 P.2d 1001.

¶26 ▮ Section 45-6-303(1), MCA (1999), provides: "It is no defense to a charge of theft of property that the offender has an interest therein when the owner also has an interest to which the offender is not entitled." The District Court found that Virtual was a dissolved corporation. The title of a dissolved corporation's property does not transfer upon dissolution, rather the corporation continues its corporate existence, and the property remains property of the corporate entity until it is distributed to creditors and shareholders. Sections 35-1-935(1), (2)(a), MCA (1997).

¶27 ▮ In *Kuntz*, we held that joint tenancy is a special relationship giving a joint tenant the right to possess the whole, unlike partners who are only permitted to use or possess partnership property for partnership purposes. *Kuntz*, 265 Mont. at 256-57, 875 P.2d at 1036. Like *Kuntz*, the instant case can be distinguished from *Haack* because the director of an involuntarily dissolved corporation is only authorized to issue checks for corporate purposes, which in this case were limited to winding up the corporation. Section 35-1-935, MCA. Therefore, Debus's interest in Virtual's property was subject to the interests of creditors and the other shareholders, and does not provide a defense to theft charges pursuant to § 45-6-303(1), MCA (1999).

¶28 We conclude that there was sufficient evidence to find that Debus was not authorized to issue personal checks from Virtual's corporate account.

## ISSUE 2

¶29 Did the State present sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that the shareholders owned the money over which Debus exercised unauthorized control?

¶30 The District Court dismissed the charge that Debus exercised

unauthorized control of corporate property and found that he exercised unauthorized control over property owned by individual shareholders. Debus contends that Virtual was insolvent when he wrote the checks to Berry and Villasenor. Because creditors have priority in the assets of a dissolved corporation, Debus contends that the shareholders had no ownership interest that he could have exercised unauthorized control over.

¶31 Section 45-6-301(1)(a), MCA (1999), required that the State prove that Lane, Cohn or Chandler owned the money Debus used to pay Berry and Villasenor. Under the circumstances of this case, the State was required to prove that, if Debus had properly wound up Virtual, one of the shareholders would have had a $500 ownership interest in the remaining assets. The District Court concluded that Lane and Cohn had an equitable interest in the money taken by Debus because they had been issued shares of stock, and were therefore the owners of the property.

¶32 ██ Although a shareholder may have an equitable interest in corporate property, he or she has no legal ownership interest in corporate property. Pursuant to Montana law, a corporation continues its corporate existence after dissolution and retains its assets until winding up is complete. Section 35-1-935(1), MCA. The shareholders of a dissolved corporation have a vested equitable interest in corporate property subject to creditor claims, but still do not have a legal ownership interest. *See Belt v. Belt* (Idaho 1984), 679 P.2d 1144, 1150. Once creditor debts are satisfied, the remaining assets are divided *pro rata* between the shareholders, at which point they have a legal ownership interest. 19 C.J.S. *Corporations* § 854 (1990). Consequently, Virtual's shareholders had no ownership interest in the corporate assets until the creditors were paid and winding up was complete.

¶33 Joseph Bateson, a CPA, testified that based upon review of the records, Virtual was insolvent by $235,673 on December 1, 1997, and by $345,532 on March 1, 1999. Therefore, if Virtual had been dissolved on December 1, 1997, nothing would have remained for the shareholders after the creditors were paid. While the State attacked the reliability of this evidence at trial, it did not produce any evidence that Virtual was solvent when Debus was writing personal checks. At a minimum, the State had to prove that Virtual was worth $3333.33 on December 1, 1997. Lane's share of that amount would have been $500, the amount necessary to prove felony theft. The State failed to produce any evidence to this effect.

¶34 ██ After reviewing the evidence in the light most favorable to the

prosecution, we conclude that no rational trier of fact could have found that the State proved that Lane, Chandler or Cohn owned the money that Debus used to pay Berry and Villasenor.

¶35 We reverse the judgment of the District Court and set aside Debus's conviction.

CHIEF JUSTICE GRAY, JUSTICES REGNIER and NELSON concur.

JUSTICE COTTER specially concurs.

¶36 I concur with the Court's disposition of Issue two, and with the Court's conclusion that the District Court's judgment of conviction must be set aside. I write separately to state that because the District Court dismissed the charge that Debus exercised unauthorized control over corporate property, I would not have addressed Issue one (upon which I would have–on its merits–reached a different conclusion than that reached by the Court). In my judgment, our resolution of Issue two is dispositive.