**MAXINE BOWRY, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2008-033

Supreme Court of the Virgin Islands

July 28, 2009

JOMO MEADE, ESQ., St. Croix, USVI, *Attorney for Appellant.*

RICHARD S. DAVIS, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; SWAN, *Associate Justice*; and HODGE, *Designated Justice.*[1]

## OPINION OF THE COURT

(July 28, 2009)

HODGE, C.J. Appellant Maxine Bowry (hereafter "Bowry") argues that this Court should reverse her convictions for four counts of obtaining money under false pretenses pursuant to title 14, section 834(2) of the Virgin Islands Code because the trial court purportedly 1) erred in denying her motion for acquittal due to the failure of the Appellee, the People of the Virgin Islands (hereafter "People"), to prove beyond a reasonable doubt that she had a specific intent to defraud; 2) made numerous evidentiary errors during trial; and 3) should have granted her motion for acquittal or new trial when it discovered that the People failed to provide Bowry with a copy of an accounting report prior to her trial. For the following reasons, we shall affirm Bowry's convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

From 1998 until January 30, 2003, the Virgin Islands Bar Association (hereafter "VIBA") employed Bowry as its Executive Director. At the time, Bowry was the VIBA's only full-time employee, and the VIBA paid Bowry an annual salary of $35,000.00. During this period, VIBA maintained three accounts — an operating fund, a scholarship fund, and a reserve fund — and paid its general operating expenses, including Bowry's salary, from the operating fund. Bowry, however, did not have the requisite authority to sign checks to pay for her own salary.[2] Rather,

---

[1] Associate Justice Maria M. Cabret has been recused from this matter. Verne A. Hodge, a retired Presiding Judge of the Superior Court, sits in her place by designation pursuant to title 4, section 24(a) of the Virgin Islands Code.

[2] Although the evidence introduced at trial implied that Bowry was not a signatory to any of these accounts, (J.A. at 95-96; 104; 107; 238-39), Bowry's counsel stated at oral arguments that Bowry was a signatory but only lacked authority, pursuant to internal VIBA policies, to sign checks for her own salary. However, the issue of whether Bowry possessed the requisite authority to sign checks other than for her own salary is not relevant to this appeal.

only a designated VIBA officer, such as the President, could sign a check for this purpose.

In December 2005, the People filed an information charging Bowry with obtaining money by false pretenses and embezzlement. The People submitted an Amended Information on September 24, 2007 — the day Bowry's trial began — alleging seven counts of obtaining money by false pretenses and seven counts of embezzlement, with these counts corresponding to seven checks Bowry signed, issued, and cashed between December 2002 and January 2003 from the VIBA's operating and scholarship accounts. At the close of the People's case, Bowry moved for a judgment of acquittal, which was granted with respect to the seven embezzlement counts. On October 5, 2007, the jury found Bowry guilty of the first four counts of obtaining money under false pretenses but acquitted her of the remaining three counts.

On November 26, 2007, Bowry filed a post-trial motion for acquittal or new trial, alleging that the evidence was not sufficient to establish that she obtained money by false pretenses and that the People had withheld, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), an accounting report that Bowry characterized as exculpatory evidence. The Superior Court denied Bowry's motion and held a sentencing hearing on April 16, 2008. Bowry filed her notice of appeal on April 28, 2008, and the Superior Court entered its judgment sentencing Bowry on April 29, 2008.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4 § 32(a). The judgment sentencing Bowry was entered on April 29, 2008, and Bowry's notice of appeal was filed on April 28, 2008. "A notice of appeal filed after the announcement of a decision, sentence, or order — but before entry of the judgment or order — is treated as filed on the date of and after the entry of judgment." V.I.S.CT.R. 5(b)(1). Accordingly, the notice of appeal was timely filed. *See id.*

"When appellants challenge the sufficiency of the evidence presented at trial, it is well established that, in a review following conviction, all

issues of credibility within the province of the jury must be viewed in the light most favorable to the government." *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009) (quoting *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990)). "The appellate court 'must affirm the convictions if a rational trier of fact could have found the defendants guilty beyond a reasonable doubt and the convictions are supported by substantial evidence.' " *Id.* (quoting *Gonzalez*, 918 F.2d at 1132). However, "[t]his evidence 'does not need to be inconsistent with every conclusion save that of guilt' in order to sustain the verdict." *Id.* (quoting *United States v. Allard*, 240 F.2d 840, 841 (3d Cir. 1957)). Thus, "[a]n appellant who seeks to overturn a conviction on insufficiency of the evidence grounds bears 'a very heavy burden.' " *Id.* (quoting *United States v. Losada*, 674 F.2d 167, 173 (2d Cir. 1982)).

The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). However, the trial court's decisions regarding the admissibility of evidence is reviewed for abuse of discretion. *Corriette v. Morales*, 50 V.I. 202, 205 (V.I. 2008). Likewise, this Court reviews the trial court's denial of a motion for a new trial based on a *Brady* violation under an abuse of discretion standard. *Colbourne v. Gov't*, No. Crim. App. 95-214, 1995 U.S. Dist. LEXIS 21392, *3, [WL] (D.V.I. App. Div. 1997).

## B. The Evidence Was Sufficient to Sustain Bowry's Convictions

Bowry contends that the trial court erred in denying her post-verdict motion for judgment of acquittal with respect to counts one through four of the information — which charged Bowry with obtaining money by false pretense in violation of title 14, section 834(2) of the Virgin Islands Code — on the basis that the People failed to prove beyond a reasonable doubt that Bowry possessed the specific intent to defraud the VIBA. Specifically, Bowry argues that the People "presented no direct or circumstantial evidence that [Bowry] through fraudulent representation obtained the four checks . . . and that she was not legally entitled to the proceeds of the titles." (Appellant's Br. at 14.)

█ Because "[t]he statute under which [Bowry] was charged makes it a crime to knowingly and designedly, by false or fraudulent representation or pretenses, defraud[] any other person of money or property . . . . the

government was required to prove that [Bowry] knowingly submitted false statements with the specific intent to defraud the victim . . . ." *Gov't v. Adams-Tutein*, 47 V.I. 514, 522 (D.V.I. App. Div. 2005) (quoting 14 V.I.C. § 834(2)). "As used in the statute, and consistent with the common law construction of fraud, a person 'defrauds' another if he makes 'a misrepresentation of an existing material fact, knowing it to be false, . . . intending one to rely and under circumstances in which such person does rely to his damage.'" *Id.* (quoting BLACK'S LAW DICTIONARY 423 (6th ed. 1990)). The People, however, are not required to submit direct evidence of the defendant's intent in order to obtain a conviction. *See, e.g., Gov't of the V.I. v. Greene*, 708 F.2d 113, 115-16 (3d Cir. 1983); *United States v. White*, 611 F.2d 531, 539 (5th Cir. 1980).

The record indicates that the People introduced sufficient evidence to establish each element of the four charged offenses at issue. At trial, Attorney Flavia Logie, who served as the VIBA's treasurer in 2003, testified that Bowry was not an authorized signer on the VIBA's checking account. (J.A. at 95.) Similarly, Attorney Maxwell McIntosh (hereafter "McIntosh"), who served as VIBA treasurer in 2002, explained that the VIBA maintained an operating account and a scholarship account and that he and Attorney Sam Grey (hereafter "Grey") — the president of the VIBA during this period — were authorized to sign checks from either account, although there may have also been a third signer whose identity he did not recall.[3] (J.A. at 104.) McIntosh further testified that Bowry's salary was paid from the operating account and that her salary would not have been paid from the scholarship fund even if she worked on scholarship-related activities during the relevant pay period. (J.A. at 116-17.)

Grey elaborated on the procedure for paying Bowry's salary during his testimony, explaining that it was VIBA procedure for a check to be prepared biweekly which he would then sign in his firm office or at the VIBA office. (J.A. at 237-38.) Grey further explained that McIntosh was

---

[3]   Logie, McIntosh and Grey's testimony is not consistent with respect to the number of accounts maintained by the VIBA. Although both Logie and McIntosh testified that the VIBA only had an operating account and a scholarship account, (J.A. at 93; 103), Grey testified that the VIBA operated three accounts: an operating account, a scholarship account, and a reserve account. (J.A. at 240.) However, the testimony that Bowry was not authorized to sign her own payroll checks, and that payroll checks were only drawn from the operating account, is uncontradicted among these witnesses.

available to sign Bowry's paychecks in the rare instances where he was not available to sign a check during a pay period, that Bowry was never authorized to sign a payroll check herself, that Bowry had never asked permission to sign such a check, and that Bowry's paychecks were always drawn from the operating account. (J.A. at 238-39; 246.) Grey also testified that although certain expenses could be charged to the scholarship account, such as supplies, the December 9, 2002 check for $1,101.17 — the equivalent of Bowry's biweekly salary — made out to Bowry from the scholarship account was never authorized, and that he had never authorized a payroll check for anyone from that account. (J.A. at 251; 258-59; 260-61.) Grey also explained that the signature on the December 9, 2002 check matched Bowry's signature, which he recognized. (J.A. at 260.) Furthermore, Grey testified that multiple payroll checks he signed and made out to Bowry overlapped with payments made through unauthorized checks signed by Bowry for the same pay periods. (J.A. at 263-72; 276-78; 321.) Finally, Grey testified that a check signed by Bowry dated January 30, 2003, which purportedly represented vacation pay, had not been authorized by the VIBA. (J.A. at 326.)

■■■■ The testimony of Logie, McIntosh, and Grey, when viewed in the light most favorable to the People, is sufficient to establish that Bowry was not authorized to sign a payroll check from either the operating or scholarship accounts in her name and that she was aware that payroll checks required the signature of the VIBA president, treasurer, or other authorized signer.[4] Courts have consistently held that attempting to withdraw funds from a bank account without authorization allows the trier of fact to infer an intent to defraud. *See People v. Cullen*, 99 Cal. App. 2d 468, 221 P.2d 1016, 1021 (1950) ("Since there was sufficient evidence to show defendant wrongfully forged Boyer's name to the check, without authority, the trial court had the right to infer, from the circumstances established, that defendant intended to defraud

---

[4] Although Ronald Russell (hereafter "Russell"), who served on the VIBA board of governors until 2001, testified that he allowed Bowry to write checks to herself during his tenure as president in 2000 and past president in 2001, (J.A. at 500-01), this Court is required, when reviewing the sufficiency of the evidence, to credit the testimony of Logie, McIntosh, and Grey, for it is more favorable to the People's position. Furthermore, because Russell's involvement with the board of governors terminated in 2001, the testimony of Logie, McIntosh, and Grey with respect to whether Bowry had the authority to sign her own payroll checks in 2002 and 2003 remained uncontradicted.

someone."); *see also United States v. Huskins*, 152 F.3d 930, at *1 (9th Cir. 1998) (table); *Johnson v. State*, 2005 Ark. App. LEXIS 323, *3 (Ark. Ct. App. 2005); *State v. Debus*, 313 Mont. 57, 59 P.3d 1154, 1158 (2002); *Robinson v. State*, 418 So. 2d 953, 954 (Ala. Crim. App. 1982). Consequently, we find that the jury could reasonably infer that Bowry intended to defraud the VIBA by signing the four payroll checks in her own name without first obtaining consent from Grey or another authorized signer. Furthermore, with respect to the checks at issue in counts two and three of the amended information,[5] the fact that the pay periods for unauthorized checks signed by Bowry expressly overlap with those for authorized checks signed by Grey provided further support for a finding that Bowry intended to defraud the VIBA.[6] Thus, the evidence introduced at trial was sufficient for the jury to find Bowry guilty beyond a reasonable doubt on counts one through four.

## C. The Superior Court Did Not Err in its Evidentiary Rulings

Bowry further argues that the Superior Court incorrectly allowed the People to introduce copies of multiple checks into evidence without proper authentication. According to Bowry, People's Exhibit No. 4 was improperly admitted because although James Ross (hereafter "Ross") — a Merrill Lynch financial advisor — authenticated the copied check, the People failed to lay the proper foundation for their admission because neither Ross nor Grey established that they were the bank's custodian of records or had knowledge of how Merrill Lynch kept its business records.

---

[5] While Bowry notes that the People did not introduce evidence that she was not entitled to vacation pay (count four) or salary for her period assisting with the golf tournament (count one) or that the checks signed by Bowry for these purposes overlapped with checks signed by Grey, the People were not required to introduce such evidence because the fact that Bowry was not authorized to sign payroll checks in her name allows for an inference of intent to defraud. *Cullen*, 221 P.2d at 1021. Nevertheless, with respect to count one, Grey testified that Bowry had been paid in full for October and November of 2002 — the period she assisted with the golf tournament. (J.A. at 351-52.)

[6] People's Exhibit No. 8, which represents a check signed by Grey on January 10, 2003 for the December 21, 2002 through January 3, 2003 pay period, overlaps with People's Exhibit No. 7, a January 23, 2003 check signed by Bowry purportedly for the December 28, 2002 through January 10, 2003 pay period. (J.A. at 270-72.) Likewise, People's Exhibit No. 5, a check signed by Grey on December 13, 2002 for the December 7 through December 20, 2002 pay period, overlaps with People's Exhibit No. 6, a check signed by Bowry dated December 13, 2002 purportedly for the November 30, 2002 through December 13, 2002 pay period. (J.A. at 263-64; 269-71.)

Similarly, Bowry contends that People's Exhibits 5 through 13, which represented copies of additional checks, were never authenticated and that the People did not lay a foundation for their admission.

In order to determine whether the trial court erred in its evidentiary decisions, this Court must first establish which rules governing the admission of evidence apply to these proceedings. While both Bowry and the People cited the Federal Rules of Evidence for their respective arguments, this Court has recently held that the Superior Court may not invoke Superior Court Rule 7 to apply the Federal Rules of Evidence to criminal proceedings to the exclusion of the Uniform Rules of Evidence, codified at 5 V.I.C. §§ 771-956. *See Phillips v. People*, 51 V.I. 258, 274 (V.I. 2009). Consequently, this Court reviews the trial court's evidentiary determinations pursuant to the appropriate provisions of the Uniform Rules of Evidence, 5 V.I.C. § 951-56.

While Bowry argues that the exhibits were not admissible as writings made in the regular course of business because they were not authenticated by the respective banks' custodians of records or other qualified person — as required by Federal Rule of Evidence 902(11)[7] — reliance on the federal rule in this instance is misplaced because section 956 of title 5 covers the same subject matter. Section 956 reads as follows:

> The content of any admissible writing made in the regular course of "a business" as defined by section 931 of this title or in the regular course of duty of any "public official" as defined by said section, may be proved by a photostatic, microfilm, microcard, miniature photo-

---

[7] Federal Rule of Evidence 902(11) reads as follows:

The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record —

(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

(B) was kept in the course of the regularly conducted activity; and

(C) was made by the regularly conducted activity as a regular practice.

A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

graphic or other photographic copy or reproduction or by an enlargement thereof, when duly authenticated, if it was in the regular course of such business or official activity to make and preserve such copies or reproductions as a part of the records of such business or office. The introduction of such copy, reproduction or enlargement does not preclude admission of the original writing if it is still in existence.

5 V.I.C. § 956. Thus, unlike Federal Rule of Evidence 902(11), section 956 does not require that a particular individual authenticate the copy, but only that the copy be "duly authenticated" and that the judge find that it was made in the regular course of business.

■ At trial, Cristol Bronigan (hereafter "Bronigan"), a customer service supervisor employed by First Bank, testified extensively regarding the checks introduced as People's Exhibits 5 through 13. Specifically, Bronigan testified that she is familiar with First Bank's procedures for storing copies of checks, (J.A. at 144-45; 153; 165-66), that such copies are kept in the regular course of business, (J.A. at 153-60), and explained that she recognized People's Exhibits 5 through 13 as cancelled First Bank checks because of certain characteristics they possessed, such as the stamps on their backs. (J.A. at 149; 154-60.) While Bronigan acknowledged that she is not formally the custodian of records for First Bank, (J.A. at 152-53; 168), she explained that First Bank designated her as a custodian of records upon receipt of the People's subpoena "[b]ecause [the] district manager knows that I am familiar with the documents." (J.A. at 153.) Furthermore, Ross testified that he was familiar with People's Exhibit 4 and that it was microfilmed in the regular course of Merrill Lynch's business. (J.A. at 139-40; 142-43.) Given the nature of Ross and Bronigan's testimony, and the fact that Bowry does not appear to dispute that People's Exhibits 4 through 13 would have been admissible had the same testimony been rendered by Merrill Lynch and First Bank's official custodians of records, the trial court did not abuse its discretion in finding that these exhibits were admissible as business records.[8]

---

[8] Because the People's exhibits were admissible as business records, it is not necessary to consider the People's argument that the exhibits were self-authenticating pursuant to Federal Rule of Evidence 902(9) or to resolve the apparent conflict between Federal Rule of Evidence 902 and 5 V.I.C. § 951 with respect to self-authentication of certain writings.

## D. The Superior Court Did Not Abuse its Discretion in Denying a New Trial

Finally, Bowry contends that the trial court erred in denying her motion for a new trial because the People purportedly withheld an accounting report commissioned by the VIBA until after trial, in contravention of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). According to Bowry, the accounting report, which represents "an analysis of the [VIBA]'s Quickbooks System from January 1, 2000 through December 31, 2002" and "recounts, inter alia, flaws and inconsistencies in checks issued during the period in terms of amount of the checks, dates the checks were signed, services for which the checks were issue[d], and payees of the check," was "material to [Bowry]'s defense[] and there is a reasonable probability that had the report been disclosed, the result of the proceeding would have been different." (Appellant's Br. at 19-20.) Specifically, Bowry argues that she "would have used the report to impeach Attorney Grey's testimony about double payment and attribute the apparent overlapping of the issuing dates of the checks and pay periods to the flawed Quickbook[s] System." (*Id.* at 20.)

■ To prevail on a *Brady* claim, the defendant "must show that the evidence was (1) suppressed, (2) favorable, and (3) material to the defense." *Riley v. Taylor*, 277 F.3d 261, 301 (3d Cir. 2001) (citing *United States v. Perdomo*, 929 F.2d 967, 970 (3d Cir. 1991)). "Evidence is material if there is a reasonable probability that the outcome would have been different had the evidence been disclosed to the defense." *Id.* (citing *United States v. Bagley*, 473 U.S. 667, 678, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)). "Evidence that may be used to impeach may qualify as *Brady* material." *Id.* (citing *Kyles v. Whitley*, 514 U.S. 419, 445, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)).

■ We find that the accounting report, even if it was unlawfully withheld by the People, does not constitute evidence that is both favorable and material to the defense. As discussed with respect to Bowry's challenge to the sufficiency of the evidence, the fact that the People introduced uncontroverted evidence that Bowry was not authorized to sign payroll checks in her name in 2002 and 2003, yet did so anyway, enabled the jury to find that Bowry "knowingly and designedly" defrauded the VIBA "by false or fraudulent representation or pretenses." 14 V.I.C. § 834(2). Although it is possible that the accounting report could

have allowed Bowry to impeach certain aspects of Grey's testimony or to attribute the fact that some checks overlapped to problems with the Quickbooks system, the report is irrelevant to the core, related issues of the case: whether Bowry was authorized to sign the four checks and whether Bowry possessed an intent to defraud the VIBA. Furthermore, as the Superior Court observed in its April 14, 2008 order denying Bowry's motion for judgment of acquittal, because the uncontradicted testimony at trial established that Bowry was the primary user and administrator of the Quickbooks system, (J.A. at 236; 365), any discrepancies between the Quickbooks system and the checks introduced at trial would have been solely "attributable to the misconduct of Bowry," and would thus likely not favor Bowry if introduced at a new trial. (J.A. at 87.) Thus, we find that the Superior Court did not abuse its discretion when it denied Bowry's motion for a new trial on this basis.

## III. CONCLUSION

Since the People introduced uncontroverted evidence at trial that Bowry was not authorized to write payrolls checks in her name, the evidence was sufficient to sustain Bowry's convictions because the jury could infer an intent to defraud from the act of cashing an unauthorized check. Furthermore, the Superior Court did not err in allowing the People to admit Exhibits No. 4 through 13 into evidence because the documents were admissible as records kept in the ordinary course of business. Finally, the trial court did not err in denying Bowry a new trial because the People's failure to provide the accounting report did not constitute the impermissible withholding of material and favorable exculpatory evidence that rises to the level of a *Brady* violation. Accordingly, this Court affirms the Superior Court's April 29, 2008 order of judgment and commitment.