**PEOPLE OF THE VIRGIN ISLANDS, Appellant/Plaintiff**

**v.**

**JAHLIL J. WARD, Appellee/Defendant**

S. Ct. Crim. No. 2011-0041

Supreme Court of the Virgin Islands

September 27, 2011

831

832

MATTHEW C. PHELAN, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellant.*

MICHAEL C. QUINN, ESQ., ASHLEE M. GRAY, ESQ., Dudley, Topper and Feuerzeig, LLP, St. Thomas, USVI, *Attorneys for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(September 27, 2011)

HODGE, C.J. Appellant People of the Virgin Islands seeks appellate review of a May 26, 2011 Superior Court Opinion and Order precluding two prosecution witnesses from testifying during the third trial of Appellee Jahlil J. Ward for what that court characterized as violations of the doctrines established by the Supreme Court of the United States in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) and *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) that occurred before and after Ward's second trial. Because the pertinent conduct did not violate the requirements of either the *Brady* or *Giglio* decisions, we reverse the Superior Court's exclusion order.

## I. STATEMENT OF FACTS AND PROCEDURAL POSTURE

The instant interlocutory appeal stems from criminal charges the People initially filed against Ward on June 30, 2008, which relate to the death of James Patrick Cockayne on June 19, 2007 on St. John. Specifically, the People charged Ward and his co-defendants Kamal

Thomas and Anselmo Boston with assaulting and murdering Cockayne, as well as committing the assault with a dangerous weapon. A consolidated jury trial began on October 6, 2008, during which Thomas, through his counsel, contended that Ward had murdered Cockayne, while Ward presented a defense implicating Thomas as the killer. Ultimately, the jury found Ward guilty of first degree murder, third degree assault, and using a dangerous weapon during a third degree assault. In addition, the jury acquitted Thomas and Boston of murder, but found them guilty of third degree assault, using a dangerous weapon during a crime of violence, and simple assault.

Ward filed, on October 24, 2008, a motion for judgment of acquittal or new trial, based on the sufficiency and weight of the evidence as well as various alleged trial errors. On January 12, 2009, Ward filed a motion for a new trial on the grounds that a new witness, Donald Lee, had come forward stating that Thomas had confessed to killing Cockayne. Finally, on April 16, 2009, Ward filed yet another motion for a new trial, which alleged that the People had violated *Brady* by failing to provide his counsel with a transcript of a September 12, 2007 interview the Federal Bureau of Investigation had conducted with Daryl Martens, in which Martens stated that Thomas had told him that he had killed Cockayne by stabbing him multiple times. Although the People filed an opposition to the April 16, 2009 motion, the Superior Court, in a May 29, 2009 Order entered *sua sponte*, required the People to respond to numerous questions the Superior Court had about the Martens interview and other aspects of the Ward prosecution. After considering the parties' filings and the People's response, the Superior Court, in an August 6, 2009 Opinion and Order, denied the October 24, 2008 and January 12, 2009 motions, but granted the April 16, 2009 motion after holding that the People's failure to disclose the Martens interview to Ward's counsel prior to trial constituted a *Brady* violation that warranted a new trial. (J.A. 235-40.)

The day after the Superior Court issued its August 6, 2009 Opinion, the People filed an informative motion informing the defendants and the Superior Court that Jeanie and William Cockayne — Cockayne's parents — had made payments to Martens prior to trial. Shortly thereafter, the People disclosed that the Cockayne family made payments to a second witness — Aaron Ferguson — before and after trial, and had also paid money to a third witness, Kenneth Rawlings, after trial. The People, however, maintained that these payments were not made with the

prosecution's knowledge, and that it would not grant immunity to Martens, Rawlings, Ferguson, or Cockayne's parents. As a result, the Superior Court also granted Boston and Thomas new trials based on newly discovered evidence, severed Ward's second trial from Thomas and Boston's new trial, and made several rulings with respect to how the Martens interview, the witness payments, and various statements against interest by Thomas and Boston could be introduced at Ward's re-trial.

Ward's second trial began on December 14, 2009, and on December 18, 2009 the jury acquitted Ward of first degree murder, but found him guilty of second degree murder, third degree assault, and use of a dangerous weapon during a third degree assault. On January 5, 2010, Ward filed a motion for a new trial based on the weight of the evidence and various alleged trial errors, including the fact that Martens had not been available to personally testify at the second trial. The Superior Court, in a July 23, 2010 Opinion and Order, held that Martens's absence did not deprive Ward of a fair trial, but found that the evidence against Ward was "paper thin" and that allowing the verdict to stand would result in a miscarriage of justice because there was no direct evidence linking Ward to the charged offenses. (J.A. 287-88.)

In support of its holding, the Superior Court characterized the evidence introduced against Ward at his second trial as "uncorroborated, ambiguous, and post-offense purported confessions," (J.A. 288 (emphasis omitted)), which had been introduced through the testimony of Glanville Frazer, Ashanti Leslie, Jo'nique Clendinen, and Jamal Jackson. (J.A. 291.) In the process of analyzing the credibility of these four witnesses, the Superior Court also concluded that Frazer's testimony that Ward had told him that he had "f***ed up a white boy" and needed a ride home gave rise to new *Brady* violations by the People, in that Frazer's actions could have constituted two felonies — accessory-after-the-fact and misprision of a felony — and that "[t]he implication is . . . that there was a *quid pro quo* which was not disclosed to counsel for Defendant Ward." (J.A. 292.) In addition, the Superior Court found that the People knew that Frazer had been sentenced on February 9, 2006 to three years probation and a two year suspension of his driver's license in an unrelated case — meaning that Frazer thus was not eligible to drive on the night of Cockayne's death — and violated *Brady* by failing to notify Ward of this fact. (J.A. 293.) Moreover, the Superior Court held that, because Ward had previously been convicted of a felony, associating with Ward would

have violated the conditions of Frazer's probation, which the People had also failed to disclose in violation of *Brady*. The Superior Court also noted that at Frazer's most recent probation revocation hearing on January 19, 2009, the People had requested that the Superior Court show Frazer leniency because he was a witness in Ward's case, which the People also failed to disclose to Ward's counsel in violation of *Brady*. (J.A. 293-96.) Finally, the Superior Court found that Clendinen — who testified that she was present at Frazer's apartment when Ward allegedly stated that he "f***ed up a white boy" and that Frazer had used her car to give Ward a ride home — also subjected her to potential liability for accessory-after-the-fact and misprision of a felony, and that, as with Frazer, the record lacked any evidence that prosecutors or law enforcement officers advised her of her rights or gave her immunity in exchange for her testimony. (J.A. 297.)

On August 5, 2010, Ward filed a motion to dismiss all charges against him based on the non-disclosures the Superior Court identified in its July 23, 2010 Opinion, in which Ward, while still framing his argument in terms of the requirements of *Brady*, also stated that the non-disclosures may have implicated the holdings in *Giglio*. The Superior Court, in an August 12, 2010 Order, directed the People to file a response to the motion, ordered both parties to brief certain legal issues, and mandated that the People respond to various factual questions it had with respect to the People's interactions with Frazer and Clendinen, including why the People declined to prosecute them. (J.A. 328-29.) After the parties submitted all requested materials, the Superior Court, in a December 10, 2010 Order, directed the parties to brief various issues, including whether, if the Superior Court declined to dismiss the information, whether it should preclude Frazer and Clendinen from testifying at Ward's third trial. Finally, in a January 20, 2011 Order, the Superior Court again directed the People to respond to numerous factual questions relating to what the Superior Court perceived as similarities between Ward's case and *People of the V.I. v. Jones*, Super. Ct. Crim. No. 218/2009 (STT), in which Frazer had also been a prosecution witness and involved facts that the Superior Court found similar to the Cockayne death.

The Superior Court, in a May 26, 2011 Opinion and Order, declined to dismiss the charges against Ward, but precluded Frazer and Clendinen from testifying at Ward's third trial based on the *Brady* and *Giglio* violations identified in the July 23, 2010 Opinion, as well as three

additional *Brady* violations it discovered on its own initiative through its August 12, 2010 and January 20, 2011 Orders. First, the Superior Court found that the *Jones* case presented facts and circumstances that were "strikingly similar" as to those surrounding the Cockayne death, in that Frazer was a prosecution witness in both cases, Cockayne and the victim in *Jones* were both "intoxicated, non-resident, Caucasian victims on the island of St. John that were brutally assaulted by allegedly multiple Black assailants," and "[b]oth victims were . . . apparently seeking to purchase drugs from 'locals' on St. John," and with Frazer serving as a prosecution witness in both cases. (J.A. 9.) According to the Superior Court, the similarities between the two cases required the People to inform Ward's counsel of the *Jones* case, and that the failure to do so violated the requirements flowing from *Brady* and its progeny. (*Id.*) Second, the Superior Court found that the People violated *Brady* by failing to disclose to the defense that Frazer had been declared a hostile witness in the *Jones* matter, that he had recanted a prior identification of the *Jones* assailant in open court and identified a different individual as the assailant, and that he had admitted to selling drugs to the victim and "rifling through" his wallet. (J.A. 10, 18.) Finally, the Superior Court held that the People's response to the January 20, 2011 Order also violated *Brady* because it had denied that the *Jones* matter was similar to this case and "dealt short shrift and vaguely with the obvious *Brady* violations." (*Id.*)

While the Superior Court declined to dismiss the information against Ward, it held that precluding Frazer and Clendinen from testifying at the third trial was necessary "in order to deter the People's apparent lawlessness." (J.A. 24.) Notably, the Superior Court found that "the record is pellucid with respect to the People's unabated misconduct in this matter," and that "[the]se violations have not only been willful, prejudicial and egregious but also 'material' because there is a probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different and/or the suppression of the evidence 'undermine[s] confidence in the outcome of the trial.' " (J.A. 23-24.) In addition, the Superior Court stated that "[i]f . . . the prosecution insists on proving to the Court that it is indeed 'bent on mischief' and commits one (1) more *Brady* or *Giglio* violation, the Court will, without hesitation, immediately dismiss this matter with prejudice!" (J.A. 24.) On June 9, 2011, the People filed its notice of appeal of the May 26, 2011 Opinion and Order.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

■ "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4 § 32(a). Although the People may not generally appeal an order or judgment in a criminal case, *People v. George*, 49 V.I. 504, 507 (V.I. 2008), statutory authority expressly permits the People to appeal from the portion of the May 26, 2011 Opinion and Order which precludes Frazer and Clendinen from testifying at Ward's third trial. *See* 4 V.I.C. § 33(d)(2) ("An appeal by the Government of the Virgin Islands shall lie to the Supreme Court from a decision or order of the Superior Court suppressing or excluding evidence . . . ."). In addition, the time to file a notice of appeal of an interlocutory appeal authorized by section 33 is jurisdictional, *see First Am. Dev. Group/Carib, LLC v. WestLB AG*, S. Ct. Civ. No. 2010-0084, 2011 V.I. Supreme LEXIS 19, at *12 (V.I. July 26, 2011), and the People's notice of appeal was timely filed within the period set by statute. *See* 4 V.I.C. § 33(d)(5) ("The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.").

But while this Court clearly has jurisdiction to review the portion of the May 26, 2011 Opinion and Order that precludes Frazer and Clendinen's testimony, both parties have requested that this Court review other decisions rendered by the Superior Court in this matter. In support of its argument that the Superior Court erred in precluding Frazer and Clendinen's testimony, the People contend that no *Brady* or *Giglio* violations actually occurred with respect to Ward's second trial, and therefore no remedy or sanction — let alone exclusion of evidence — should have been imposed by the Superior Court. But while the Superior Court identified three *Brady* violations for the first time in its May 26, 2011 Opinion — all relating to the alleged similarities to the *Jones* case — the Superior Court also based its decision on the alleged *Brady* and *Giglio* violations identified in its July 23, 2010 Opinion. Importantly, the Superior Court made those findings in the context of granting Ward's motion for a new trial based on the weight of the evidence, a ruling which the People were prohibited from appealing because it is not among the appeals by the government authorized by section 33.

838

Likewise, in his appellate brief, Ward, in a section titled "Counter-Statement of the Issues," identifies the following as the sole issue on appeal:

> In light of the People's serial violations of *Brady* and *Giglio*, did the Superior Court abuse its discretion by declining to exercise its supervisory powers to dismiss the charges against Ward and instead order the preclusion of testimony by witnesses to whom the *Brady* and *Giglio* violations pertain?

(Appellee's Br. 2.) But just as this Court would ordinarily lack jurisdiction to hear an appeal by the government of an interlocutory order granting a criminal defendant a new trial, this Court would also typically lack jurisdiction to consider an immediate appeal by a criminal defendant from an order denying a motion to dismiss the information because such an interlocutory appeal is also not authorized by section 33 or any other statute.

■ Nevertheless, an appellate court may, "in certain cases, exercise pendent appellate jurisdiction over issues not otherwise appealable." *Invista S.À.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 88 (3d Cir. 2010). "The doctrine of pendent appellate jurisdiction, in its broadest formulation, allows an appellate court in its discretion to exercise jurisdiction over issues that are not independently appealable but that are intertwined with issues over which the appellate court properly and independently exercises its jurisdiction." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 202-03 (3d Cir. 2001) (citations omitted). " 'Issues are 'inextricably intertwined' only when the appealable issue 'cannot be resolved without reference to the otherwise unappealable issue.' " *Invista*, 625 F.3d at 88 (quoting *American Soc'y for Testing & Materials v. Corrpro Cos., Inc.*, 478 F.3d 557, 580-81 (3d Cir. 2007)). However, some courts have held that the "inextricably intertwined" standard also allows an appellate court to exercise pendent appellate jurisdiction if "resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue." *Batzel v. Smith*, 333 F.3d 1018, 1023 (9th Cir. 2003). While the concept of pendent appellate jurisdiction originated in the civil context, appellate courts have also extended it to criminal cases, and some courts have even implied that the government may challenge even seemingly unrelated decisions so long as any interlocutory appeal is permitted. *See, e.g., United States v. Zafiro*, 945 F.2d 881, 885 (7th Cir. 1999) ("If the

government appeals the dismissal of an indictment or some other order made appealable by 18 U.S.C. § 3731, it may be permitted to challenge a severance under the doctrine of pendent appellate jurisdiction.") (citing *United States v. Maker*, 751 F.2d 614, 626 (3d Cir. 1984)).

■ Here, the portion of the July 23, 2010 Opinion that found that the People committed various *Brady* and *Giglio* violations both before and after Ward's second trial is clearly inextricably intertwined with the portion of the May 26, 2011 Opinion and Order that precludes Frazer and Clendinen from testifying at Ward's third trial. Significantly, the May 26, 2011 Opinion expressly references the July 23, 2010 Opinion, and identifies those purported *Brady* and *Giglio* violations — combined with the additional purported *Brady* violations discussed for the first time in the May 26, 2011 Opinion — as the reason for its decision to prohibit the People from calling Frazer and Clendinen as witnesses at the third trial. In other words, it is simply not possible for this Court to determine whether the Superior Court erred in excluding this testimony without reviewing the correctness of the Superior Court's *Brady* and *Giglio* analysis in the July 23, 2010 Opinion.

■ This Court, however, declines to exercise pendent appellate jurisdiction over the portions of the July 23, 2010 Opinion and Order that granted Ward a new trial based on the weight of the evidence. Although the *Zafiro* and *Maker* courts implied, in dicta, that the "inextricably intertwined" standard for pendent appellate jurisdiction may not apply to the government, *see United States v. Hsia*, 176 F.3d 517, 526, 336 U.S. App. D.C. 91 (D.C. Cir. 1999) (noting that standards for pendent appellate jurisdiction in criminal cases may differ for defendants and the government) (citing *Zafiro*, 945 F.2d at 885), we decline to resolve this issue as part of this appeal because the People, in its brief, does not challenge the correctness of the Superior Court's decision to order a third trial based on the weight of the evidence, but requests, as the sole remedy, that this Court reverse the portions of the May 26, 2011 Opinion and Order that preclude Frazer and Clendinen from testifying at that trial. Accordingly, even if the People arguably could have requested that this Court exercise pendent appellate jurisdiction over the Superior Court's decision to grant Ward a new trial, the People's decision to expressly seek a lesser form of relief represents a waiver of that right. *Cf. Magens Point Resort Hotel v. Benjamin*, S. Ct. Civ. No. 2008-0006, 2009 V.I. Supreme LEXIS 30, at *4, [WL], at *3 (V.I. Apr. 8, 2009) (unpublished).

■ For similar reasons, we decline to exercise jurisdiction over the portions of the May 26, 2011 Opinion and Order that denied Ward's motion to dismiss the information. Although Ward, unlike the People, has expressly requested that this Court review this portion of the Superior Court's decision, we note that Ward never filed a cross-appeal of the May 26, 2011 Opinion and Order, and that the time to file such a cross-appeal has long since expired. *See* V.I.S.CT.R. 5(b)(1) ("In a criminal case, a defendant shall file the notice of appeal in the Superior Court within fourteen days after the entry of . . . a notice of appeal by the Government."). Rather, Ward has simply raised this issue for the first time in his appellate brief. Because it is well established that "a party may not seek more extensive relief on appeal than it received in the [trial] court without filing a cross-appeal," it is not necessary for this Court to even determine whether this portion of the May 26, 2011 Opinion and Order is inextricably intertwined with the portion of the May 26, 2011 Opinion and Order appealed by the People. *See United States v. Lieberman*, 971 F.2d 989, 996 n.5 (3d Cir. 1992) (collecting cases).[1]

This Court reviews the Superior Court's remedy for a *Brady* or *Giglio* violation for an abuse of discretion. *Bowry v. People*, 52 V.I. 264, 268 (V.I. 2009). "An abuse of discretion arises only when the decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Stevens v. People*, S. Ct. Crim. No. 2010-0001, 2011 V.I. Supreme LEXIS 16, at *10 (V.I. June 22, 2011) (internal quotation marks omitted) (citing *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003)).

## B. The *Brady* and *Giglio* Violations

The People, in its appellate brief, primarily argue that this Court should reverse the Superior Court's decision to preclude Frazer and Clendinen from testifying because the People did not commit any violations of *Brady* or *Giglio* before or after Ward's second trial, and that, to the extent any *Brady* violations occurred, they have been remedied. While Ward devotes a significant portion of his appellate brief to explaining why he

---

[1] Nevertheless, our ultimate decision to reverse the portion of the May 26, 2011 Opinion and Order precluding Frazer and Clendinen from testifying has the same effect as affirming the denial of Ward's motion to dismiss, albeit for different reasons than articulated by the Superior Court.

believes all charges against him should be dismissed — an issue which this Court declines to reach due to Ward's failure to file a cross-appeal — he does respond to the People's argument by essentially restating the Superior Court's findings on these issues. For the reasons that follow, we hold that the doctrine enunciated in *Giglio* is not implicated in this matter, that none of the conduct described in the July 23, 2010 and May 26, 2011 Opinions violated the requirements of *Brady*, and — consequently — that the Superior Court erred in precluding Frazer and Clendinen from testifying at Ward's third trial.

### 1. *Giglio* Violations

■ First, we note that both the Superior Court and the parties have, throughout the proceedings, made reference to the decisions in *Brady* and *Giglio* interchangeably without clearly differentiating between the two types of claims recognized by the Supreme Court in those decisions. As this Court has previously explained, a *Brady* violation occurs when the prosecution suppresses evidence favorable to a criminal defendant "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Stevens*, 2011 V.I. Supreme LEXIS 16, at *11 (quoting *Brady*, 373 U.S. at 87). Thus, "[t]o prevail on a *Brady* claim, the defendant must show that the evidence was (1) suppressed, (2) favorable, and (3) material to the defense." *Bowry*, 52 V.I. at 274 (internal quotation marks omitted) (citing *Riley v. Taylor*, 277 F.3d 261, 301 (3d Cir. 2001)).

■ A *Giglio* violation, however, is a type of *Brady* violation in which "the undisclosed evidence reveals that the prosecution knowingly made false statements or introduced or allowed trial testimony that it knew or should have known was false." *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1333 (11th Cir. 2009) (citing *United States v. Agurs*, 427 U.S. 97, 103-04, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976)). "To prevail on a *Giglio* claim, a [defendant] must establish that (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material." *Id.* at 1334 (quoting *Ford v. Hall*, 546 F.3d 1326, 1331-32 (11th Cir. 2008)). However, *Giglio* claims are subject to a more favorable standard of materiality than other *Brady* claims, in that a court should only disregard a *Giglio* violation if it is harmless beyond a reasonable doubt. *See, e.g., Rosencrantz v. Lafler*, 568 F.3d 577, 587 (6th Cir. 2009) (citing *Agurs*, 427 U.S. at 104, and

*Giglio*, 405 U.S. at 154); *Gilday v. Callahan*, 59 F.3d 257, 267 (1st Cir. 1995); *Occhicone v. Crosby*, 455 F.3d 1306, 1309 (11th Cir. 2006).

██ We find that *Giglio* has no applicability to this case. Although Ward, in his August 5, 2010 motion to dismiss, contended that the non-disclosures identified as *Brady* violations in the Superior Court's July 23, 2010 Opinion "are more accurately described as *Giglio* violations" because "they concern material impeachment evidence," (J.A. 303 n.1), it is well established that "[e]vidence that may be used to impeach may qualify as *Brady* material." *Bowry*, 52 V.I. at 274 (citing *Riley*, 277 F.3d at 301). Although the Superior Court's May 26, 2011 Opinion apparently accepted this argument by referring to the purported "*de facto* grant of immunity" to Frazer and Clendinen as "*Brady/Giglio* violation[s]," (J.A. 6-7), and then proceeding to analyze them under *Giglio*, (J.A. 15-17), the Superior Court never found, in either the July 23, 2010 Opinion or the May 26, 2011 Opinion, that Frazer or Clendinen had perjured themselves, let alone that the prosecutor knowingly used perjured testimony. Importantly, although the May 26, 2011 Opinion cites to four cases[2] for the proposition that "[m]any other courts have . . . endorsed a broader reading of *Giglio*" making its holding applicable "whenever . . . informal representation[s] about future leniency [are] made to a cooperating witness, even if it falls far short of an explicit offer," (J.A. 16), each of these cases either involves a situation where there was a claim that the prosecution was aware that its cooperating witness had perjured himself at trial,[3] or where the court actually analyzed the claim under *Brady*.[4] Nevertheless, while the Superior Court erred in applying *Giglio* rather than *Brady* to the alleged immunity agreements, this Court is permitted to

---

[2] *People v. Diaz*, 297 Ill. App. 3d 362, 696 N.E.2d 819, 826 (1998); *Owen v. State*, 265 Ga. 67, 453 S.E.2d 728, 730 (1995); *Commonwealth v. Hill*, 432 Mass. 704, 739 N.E.2d 670, 676 (2000); *Burkhalter v. State*, 493 S.W.2d 214 (Tex. Crim. App. 1973).

[3] *See Diaz*, 696 N.E.2d at 826 ("At trial, Muriel falsely testified that he did not seek or receive any promises of leniency, that his motive was to rid the county jail of drug dealing."); *Burkhalter*, 493 S.W.2d at 218 ("We fully appreciate the State's position that there was no false evidence here. . . . Even if we assume this ignorance, arguendo, we find that the prosecutor's silence as to the plan not to prosecute conveyed an impression to the jury which the State knew to be false and one which should have been corrected.").

[4] For instance, the *Hill* opinion does not contain any citation or reference to *Giglio*, but analyzed the prosecution's failure to disclose an agreement with a witness solely under *Brady*. *See* 739 N.E.2d at 672, 679. Although *Owen* opinion does mention *Giglio*, it does so to provide further support for its *Brady* analysis. *See* 453 S.E.2d at 730-31.

apply the correct legal standard on appeal in the first instance. *Cf. Occhicone*, 455 F.3d at 1309 (applying *Giglio* standard to habeas corpus appeal when state appellate court erroneously applied *Brady* standard).

### 2. *Brady* and the Conduct Described in the July 23, 2010 Opinion

The Superior Court, in its July 23, 2010 Opinion, found that the People violated *Brady* by failing to disclose (1) what it characterized as implicit *quid pro quo* agreements that the People had allegedly entered into with Frazer and Clendinen, (2) that Frazer was not permitted to drive or associate with Ward on the night of Cockayne's death without violating the terms of his probation, and (3) that it had requested leniency for Frazer at his January 19, 2009 probation revocation hearing. In its appellate brief, the People contend that none of these non-disclosures constitute *Brady* violations because (1) there is no evidence of any *quid pro quo* agreements, (2) Ward knew or should have known the information, and (3) none of the information is material.

 As a threshold matter, it is the defendant who bears the burden of showing that a *Brady* violation has occurred. *Bowry*, 52 V.I. at 274 (citing *Riley*, 277 F.3d at 301). Although not raised as an issue on appeal, we are compelled to recognize that in this case Ward's January 5, 2010 motion only sought a new trial based on the weight of the evidence and Martens's failure to personally testify at the second trial, and it appears that the Superior Court both raised and resolved the *Brady* issue *sua sponte* for the first time in the July 23, 2010 Opinion without providing Ward or the People with an opportunity to brief the issue before it rendered its judgment. Consequently, the Superior Court exceeded its authority when it concluded in its July 23, 2010 Opinion that the People committed multiple *Brady* violations without first providing the People with an opportunity to respond to the allegations. *Cf. In re State*, 162 S.W.3d 672, 676 (Tex. App. 2005) ("Respondent entered the challenged orders without any motion by any of the 652 defendants and without affording the State an opportunity to be heard. Thus, the State was never allowed to present to the trial court its argument that the documents are work product, and therefore, exempt from discovery.").

 Nevertheless, even if we were to disregard the Superior Court's failure to provide any notice to the parties before *sua sponte* holding that the People committed prosecutorial misconduct, we would hold that the Superior Court misapplied *Brady*. With respect to the alleged *quid pro*

*quo* agreements, the Superior Court based its finding that the People had entered into implied agreements with Frazer and Clendinen primarily on the grounds that (1) the prosecutors were aware that Frazer and Clendinen, by testifying, could potentially subject themselves to prosecution for accessory-after-the-fact and misprision of a felony, and (2) the record purportedly contained no evidence as to whether Frazer and Clendinen were given immunity from prosecution for those felonies. (J.A. 292, 297). But contrary to the Superior Court's claim that the record is silent on the immunity issue, the People, in its February 16, 2010 response to an oral order rendered by the Superior Court at a January 22, 2010 hearing, had expressly stated that "[t]he Government did not extend immunity to anyone related to the Cockayne Murder Trial," and "that **NO ONE** was ever granted immunity." (J.A. 254-54.) The Superior Court, however, does not discuss this portion of the February 16, 2010 response in either the July 23, 2010 Opinion or the May 26, 2011 Opinion. Accordingly, the Superior Court's holding that there was nothing in the record with respect to whether Frazer or Clendinen received immunity from the People was "patently incorrect" and "must be reversed" because the Superior Court made its finding without considering all materials in the record during its analysis. *Rivera-Mercado v. General Motors Corp.*, 51 V.I. 307, 312 (V.I. 2009).

■■■■■■■ Moreover, even if the Superior Court was correct that counsel for the People should have been aware once Frazer and Clendinen testified that their testimony constituted confessions to two felonies, the Superior Court failed to explain, in either the July 23, 2010 Opinion or the May 26, 2011 Opinion, why Ward's counsel would not have also been aware of this fact. It is well established that "the government is not obliged under *Brady* to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself." *United States v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984) (citation omitted). In addition, it is equally well established "that lawyers who are licensed to practice law by our highest courts are presumed to know the law." *People v. McCord*, 63 Ill. App. 3d 542, 379 N.E.2d 1325, 1331 (1978). *See also Osagiede v. United States*, 543 F.3d 399, 409 (7th Cir. 2008) ("All lawyers that represent criminal defendants are expected to know the laws applicable to their client's defense."). Given that Ward was represented by counsel at his second trial, the same knowledge of the accessory-after-the-fact and misprision statutes the Superior Court

imputed onto the People's counsel should also have been imputed to Ward's counsel. Therefore, Ward's counsel, after hearing Frazer and Clendinen testify at trial, could have questioned them as to whether they were aware that the activities they described might themselves constitute felonies and if they had entered into any agreements with the People in exchange for their testimony, yet — for whatever reason — chose not to take advantage of this opportunity. Thus, the People did not suppress any evidence with respect to any potential *quid pro quo* agreements with Frazer and Clendinen. *See Stevens*, 2011 V.I. Supreme LEXIS 16, at *26.

 Likewise, Ward's counsel knew or should have known about the conditions of Frazer's probation, as well as the fact that the People requested leniency for Frazer at his probation revocation hearing. Here, the record indicates that the People provided Ward's counsel with Frazer's criminal history on September 26, 2008, (J.A. 98), and the record contains no indication that this history was not complete. While *Brady* requires that a prosecutor disclose the fact that a prosecution witness has a prior criminal conviction, *see United States v. Perdomo*, 929 F.2d 967, 970-71 (3d Cir. 1991), the prosecution is not mandated to provide the defense with specific documents from that proceeding, since court records are public records that defense counsel is free to inspect. *See, e.g., United States v. Coplen*, 565 F.3d 1094, 1097 (8th Cir. 2009) ("Coplen is also unable to establish a *Brady* violation . . . . Both Scott and Altman testified as defense witnesses in a related trial that predated Coplen's by several months and their testimony was a matter of public record."); *Price v. Thurmer*, 514 F.3d 729, 731-32 (7th Cir. 2008) (holding indictment is a public record readily accessible to defense counsel); *United States v. Cook*, 170 Fed. Appx. 639, 640 (11th Cir. 2006) (unpublished) (holding failure to disclose fact that witness was on probation did not violate *Brady* because this information "was publicly available"); *United States v. Infante*, 404 F.3d 376, 387 (5th Cir. 2005) ("Infante does not deny that Castellon's case file was a matter of public record, that he could have obtained the file upon request, and that the psychiatric exam order would have been apparent upon review of the file . . . . Under these particular facts, Infante's *Brady* argument is without merit."); *United States v. Jones*, 160 F.3d 473, 479 (8th Cir. 1998) (finding no *Brady* violation where the government failed to inform defense counsel of details of witness's plea agreement "because transcripts of [the] plea agreement and sentencing hearing were readily available").

 In this case, upon receiving the People's September 26, 2008 disclosure that Frazer had a prior criminal conviction, Ward's counsel could have requested that the Clerk of the Superior Court permit him to review Frazer's case file, which would have allowed him to discover that he was on probation on the night of Cockayne's death, as well as the terms of his probation. Likewise, had Ward's counsel reviewed the file before the second trial, he would have recognized that a probation revocation hearing had occurred on January 19, 2009, and could have requested the record of proceedings, ordered a full transcript, or simply questioned Frazer about it during cross-examination. Thus, because Ward's counsel could have exercised reasonable diligence to access all of this information, yet apparently chose not to do so, it appears that none of this information was "suppressed" for purposes of *Brady*. *See, e.g., United States v. Brown*, 650 F.3d 581, 588 (5th Cir. 2011) ("To have been suppressed, the evidence must not have been discoverable through the defendant's due diligence."); *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002) ("Evidence for *Brady* purposes is deemed 'suppressed' if . . . the evidence was not otherwise available to the defendant through the exercise of reasonable diligence."). Accordingly, none of the conduct the Superior Court identified in its July 23, 2010 Opinion constitutes prosecutorial misconduct.

### 3. *Brady* and the Conduct Described in the May 26, 2011 Opinion

In its May 26, 2011 Opinion, the Superior Court found that the People had violated *Brady* by (1) failing to disclose the existence of the *Jones* matter to Ward's counsel; (2) failing to inform Ward's counsel that Frazer had been declared a hostile witness in the *Jones* case, had recanted his prior identification of the *Jones* defendant, and had admitted to selling drugs to the victim and "rifling through" his wallet; and (3) filing a document in response to the Superior Court's January 20, 2011 Order that denied that the *Jones* case was similar to Ward's case and failed to acknowledge prior *Brady* violations. On appeal, the People primarily renew its argument that the *Jones* case is not similar and did not need to be disclosed,[5] while Ward again essentially adopts the Superior Court's reasoning as his own.

---

[5] In addition, the People argue in its appellate brief that the Superior Court never provided it with an opportunity to show that it did not act in bad faith when it failed to produce the *Jones* materials. But as noted earlier, this Court has previously explained that a *Brady* violation may

First, we must emphasize our prior holding that "[n]o duty exists for a prosecutor to learn of favorable evidence collected by police *in all cases* under investigation," and that a duty to disclose information obtained in connection with a different case is likely only to arise if both cases share investigative and prosecutorial personnel, which does not appear to be the situation in this case. *See Stevens*, 2011 V.I. Supreme LEXIS 16, at *20. But even if we were to assume without deciding that the People possessed a duty under *Brady* to disclose both the existence of the *Jones* case and Frazer's involvement in that case, the Superior Court erred in holding that this information had been suppressed. To constitute a *Brady* violation, the prosecution must have failed to *timely* disclose the pertinent materials. *See Starusko*, 729 F.2d at 261. Importantly, trial courts possess the inherent authority to set pre-trial deadlines for the disclosure of *Brady* material, which the prosecution must abide by unless the court has abused its discretion in setting a particular deadline. *Id.* However, in the absence of a scheduling order, disclosure is timely "if *Brady* material is disclosed . . . in time for its effective use at trial." *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983).

Here, the Superior Court acted prematurely when it held that the People had failed to disclose the *Jones* matter. As noted earlier, the People have no obligation to provide Ward's counsel with information the defense already possessed, or could obtain with reasonable diligence. *Starusko*, 729 F.2d at 262. The record clearly establishes that Ward, through his counsel, became aware of the *Jones* matter, as well as the fact that Frazer was a witness in that case and had filed an affidavit admitting to continuing to sell narcotics, on August 19, 2010 — three weeks after the Superior Court granted Ward's request for a third trial — when the *Jones* defendant's counsel contacted Ward's counsel. (J.A. 336.) Moreover, the People's February 25, 2011 response to the Superior Court's January 20, 2011 Order acknowledged that the *Jones* case went to trial on January 24, 2011 and that Frazer ultimately testified in that matter. (J.A. 413-14.) Under these circumstances, the People would have possessed no obligation to provide Ward's counsel with any additional

occur "irrespective of the good faith or bad faith of the prosecution." *Stevens*, 2011 V.I. Supreme LEXIS 16, at *11 (quoting *Brady*, 373 U.S. at 87), and thus whether the People deliberately withheld this information is irrelevant to determining whether a *Brady* violation actually occurred, even though it may be relevant to determining whether a remedy or sanction greater than a new trial is warranted.

materials related to the *Jones* case prior to the third trial, since the defense was clearly aware of the case and could obtain any additional information — such as the contents of Frazer's testimony — by ordering a transcript. *Jones*, 160 F.3d at 479.

But even more significantly, the Superior Court's certified docket entries reflect that the Superior Court never set a date for Ward's third trial, and did not issue an order establishing a deadline for disclosure of all *Brady* and *Giglio* material until May 26, 2011 — the same day it held that the People's failure to disclose the materials related to the *Jones* case violated *Brady*. In addition, Ward filed a motion to dismiss approximately a week and a half after the Superior Court ordered the third trial, which remained pending until May 26, 2011, the same day the Superior Court entered its preclusion order. Given the failure of the Superior Court to set a trial date or establish discovery deadlines, as well as the uncertainty as to whether the case would even proceed to trial at all, the deadline for People to disclose *Brady* material in anticipation of the third trial certainly could not have lapsed.[6] Accordingly, the Superior Court erred when it held that the conduct described in the May 26, 2011 Opinion violated *Brady*, and, consequently, we reverse its decision to preclude Frazer and Clendinen from testifying at Ward's third trial.[7]

---

[6] We also note that the Superior Court, in holding that *Brady* had been violated, appeared to simply assume that the People intended to call Frazer as a witness at Ward's third trial. Although the People had called Frazer as a prosecution witness in Ward's first and second trials, both of those trials had occurred *before* Frazer testified in the *Jones* case. "Any lawyer who has ever tried a case knows that trial preparation is not a static process." *Nguyen v. Lindsey*, 232 F.3d 1236, 1240 (9th Cir. 2000). In holding that *Brady* was violated, however, the Superior Court appeared to take for granted that the People would call Frazer as a witness again, rather than simply relying on the other three witnesses that had testified concerning Ward's alleged confession. *See United States v. Gale*, 314 F.3d 1, 4, 354 U.S. App. D.C. 161 (D.C. Cir. 2003) ("[Gale] has offered no reason to believe that, had the impeachment evidence in question 'been disclosed to the defense,' the government would have foolishly charged ahead, blindly offering Brown and exposing itself to his inevitable demolition on cross. Why would it have done so, rather than simply offering another expert?"). While the fact that the People ultimately appealed the Superior Court's exclusion order reveals that the People likely will call Frazer as a witness at the third trial, we emphasize that, because it never set a date for the third trial or imposed any pre-trial deadlines, the Superior Court — at the time it issued its May 26, 2011 Opinion and Order — had no way of knowing who the People intended to call as witnesses at the third trial.

[7] Given our holding that the People did not violate *Brady* or *Giglio*, it is not necessary for us to consider the People's alternate argument that the Superior Court erred in precluding Frazer

## III. CONCLUSION

 Since a prosecutor only possesses, under *Brady*, an obligation to disclose material that is not already in the possession of the defense, or which the defense cannot obtain through reasonable investigation, the People did not violate *Brady* when it failed to disclose the information outlined in the Superior Court's July 23, 2010 Opinion. Likewise, even if the People possessed a duty to disclose the materials discussed in the Superior Court's May 26, 2011 Opinion, the People's non-disclosures did not violate *Brady* because the Superior Court failed to establish deadlines for disclosure of *Brady* and *Giglio* materials and, in fact, had still not scheduled Ward's third trial. Accordingly, this Court reverses the Superior Court's May 26, 2011 Opinion and Order and remands the matter for further proceedings consistent with this opinion.

---

and Clendinen from testifying because the Superior Court's decision to grant Ward a third trial cured any prejudice resulting from any such violations.